Well, next to your argument in Acar. Good morning. I'm sure you read my brief, Your Honors, and do you have any questions to clarify any point made in my brief? You should state your name for the record. Oh, my name is Kazim Z. Acar. Last name is A-C-A-R. I'm representing myself. Perhaps we might hear from the Commissioner and then give you a chance to respond to anything he says that you disagree with. We certainly have read the briefs. Yeah. That make sense? Yes. Okay. Why don't we do that? And then we'll give you a chance to respond to anything you don't agree with. Ma'am, please. Patrick Erta for the United States. The district court correctly granted summary judgment in this case because Mr. Acar, the taxpayer, failed to timely make an election for the mark-to-market accounting method under Revenue Procedure 9917 and because he failed to qualify under Treasury Regulation 26 CFR 301.9100-3, which allows a taxpayer to request an extension of time to make such an election if he acted reasonably and in good faith. Now, I'd like to spend most of my time this morning on that second issue, the issue of whether he qualified for the extension of time, because Mr. Acar in his brief admits that he did not comply with the Treasury Regulation or with the Revenue Procedure, which stated that an election had to be made by April 15th, 1999, for Mr. Acar's tax year 1999, which was the year at issue here. And, in fact, he made his election in February of 2002. So it was untimely. So the only way that a valid election could be made is if he qualified for an extension of time under the regulation. Now, the regulation states that a taxpayer can qualify for such an extension of time if he meets two requirements. The first is that he acted reasonably and in good faith, and the second that the granting of such an extension will not prejudice the interests of the government. The district court granted summary judgment on the first of these issues, whether the taxpayer acted reasonably and in good faith. And the Treasury Regulation itself defines what it means by acting reasonably and in good faith. First of all, it sets forth five situations in which a taxpayer is deemed to have acted reasonably and in good faith, but it conditions those on other disqualifying situations. And the district court correctly found that Mr. Acar fell into one of those disqualifying situations because he used hindsight when he made his election. Now, this is an objective test. The Treasury Regulation goes on to say what hindsight means. And hindsight is when subsequent facts have arisen after the due date, the original due date for making the election, that would make the election advantageous to the taxpayer. And in this case, Mr. Acar was trading securities, and he kept trading securities after the due date for the election. And what the election is all about is that the critical fact that is particularly distinguishes this case from Vines, for example, that the taxpayer continued trading and continued to incur losses or just continued trading. It's the critical fact is that he continued to incur losses. Just as the Vines court noted in Lehrer, which is the next case on the docket, the taxpayer used hindsight because he continued to incur losses. And why that's critical is under 475F, it's an exception to the normal capital gains and losses treatment for the trades of securities. And it allows a taxpayer to recognize gains and losses within a year. So they are able to recognize them as ordinary gains and losses. Obviously, if they're ordinary gains, a taxpayer would prefer capital gains treatment. But if they're ordinary losses, they would prefer that treatment because it would allow them to escape the limitations of capital losses, which is capital losses can only be set against capital gains plus $3,000. So in this case, it would be advantageous precisely because he kept losing after the due date for the election, as the district court correctly found. And even if the hindsight bar did not apply here, the district court correctly concluded that Mr. Ackar did not qualify for any of the five situations in which he would be deemed to have acted reasonably and in good faith. And those five situations are that he requested relief under Treasury Regulation 301.9100-3 before the failure to make the election was known, that he was prevented from making the election because of extraordinary circumstances, that he was unaware of the necessity to make the election, despite the exercise of reasonable diligence, given his background and expertise in the field, that he relied on the advice of the IRS or that he relied on the advice of a tax professional when he decided not to make the election in 1999. Now, three of these, the extraordinary circumstances, the events beyond his control, the reliance on the IRS in 1999, and the reliance on a tax professional in 1999 are simply absent from the record. There's no indication that any of those three apply. And there is no indication that he requested relief under Treasury Regulation 301.9100-3 before the IRS knew that he hadn't made the original election. So that one doesn't apply. And so the only possibility is that he was unaware of the necessity to make this election, despite the exercise of reasonable diligence. In this case, the evidence is clear that Mr. Carr had been trading in securities since 1977, so he was very familiar with this system. And in 1997 was when Congress passed IRC-475F that would have originally granted him relief. He didn't discover the existence of IRC-475F, or ostensibly Reproc-9917, until 2002. That's five years later for a person who's actively involved in this industry. So I would suggest that he does not meet that qualifying factor. Unless there are any questions, I'll relinquish the remainder of my time. Your Honor, the law came into effect in 1999, February. There was no — this law was not in effect prior to that date. And then for me to be able to make timely election, I had to be aware of the law in those few months, and make the election in 1999 while I was filing my 1998 return. There wasn't enough time to discover, because the law was not reflected in any of the IRS publications for me to discover it. Nothing prompted me, because I'm not a lawyer, so I'm not constantly researching the law, hey, what's coming up. So that's one of my contention. In the summary judgment motion, Judge Hamilton said that vying case is the controlling case. She said that, hey, how come you made it, in vying case, the taxpayer made the election a few months after, within the same year, election year, a few months after the law came into effect. In my case, I waited for three years. First of all, no one defines what is the transition between timely, acceptable timely, or acceptable untimely. What is the transition between, is it a few months, a few years, that's not defined in any place. And there's this term, prejudice the government. What does that mean? It's not defined in any place how the government is going to be prejudiced. That's an ambiguous term. There is no explanation for that. And then the... I suppose the government, I've often puzzled about that, but I guess it means that the government gets less taxes? Well, the government sometimes gets less taxes, sometimes gets more taxes. That's the name of the game. I mean, this is the, you know, that's what it is. But the fact that government pays taxes, is it going, is it being prejudiced? No, the government pays taxes all the time. I pay taxes all the time. They make refunds all the time. It depends on the facts. But in this situation, it doesn't define how government is going to be prejudiced because I made my election procedural error untimely, so to speak. And that transition between, as I said, acceptable untimely or unacceptable untimely is not defined. Is it a few months or a few years? We don't know. We are talking about the tax year 1999. I wasn't able to make that. There was not enough time for me to make a timely election at that time. That's period. I mean, that's a big argument. And then the other issue is I kept on trading. So there is no hindsight because I could have made gains. Those gains would have been ordinary income. I would have declared those dividends, if any. So the government could not have been prejudiced because I don't know prospectively what's going to happen in the future, whether I'm going to make money by trading or I'm going to lose money by trading. So where is the hindsight? I don't think it applies here in terms of what it really means. So if I had stopped trading, then I am claiming past losses, yes. Then, you know, maybe one can make the argument the government is being prejudiced. I'm using hindsight because I stopped my trading. I want to claim all these losses. I'm out of business. And the other one is there was, in the later case, they talk about this, what prompted him that he had a tax-related deficiency to make that up. He was claiming these losses. There was no problem in my case. There was no tax-related deficiency to prompt me to make such an election or do an amended return. And one more thing. I think it's that I discovered this thing before IRS did. So IRS did not say, hey, you know, it came to me to make the amended return and claim that. It wasn't prompted by IRS. IRS did not discover this thing. I caused the thing, in other words, by filing the amended return and the audit. And then the other thing is they put their signature on it. The district court never referred to this twice on April 10th and April 28th. Hey, we accept your, you made a, you know, yes, you made untimely thing by the election, but you're going to grant the losses. And they changed their position. They signed on it twice. That's gentleman's agreement. They violated that, and the district court never referred to that. I mean, why don't you put your signature on it twice? That's it. That's a done deal. You cannot go back and change your position. I couldn't have done that. So the government, I mean, officers couldn't. I wouldn't expect a government officer to do something like that twice. And the district court never referred to that. No one. They just bypassed that. So they kind of, you know, they have an agenda, I guess. You know, they do their thing, and then that's abuse of discretion. And then I don't think the punishment for not failing to make this election timely is not commensurate with the losses I incurred. It's just too much of a punishment by failing some procedural error. It doesn't match. You know, those are big losses. I lost the money. That's a fact. And I should be put back in the position had I made the timely election, which is referred to in my brief. These are outside of these. That's it, I guess, unless you have questions. Okay. Mr. Ficarra, thank you for your explanation. And the matter just argued will be submitted. Okay. Thank you. I'll issue a ruling later. Thank you. And we'll next to your argument and later.
judges: Fletcher, Rymer, Duffy